August 4, 2022

VIA ECF
The Honorable Raymond J. Dearie
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:     *S.E.C. v. Vale, S.A.*, Case No. 1:22-cv-02405

Dear Judge Dearie:

Pursuant to Rule III(A) of the Court's Individual Rules, we respectfully submit this pre-motion letter on behalf of the Defendant Vale S.A. ("Vale") summarizing its contemplated motion to dismiss the complaint filed by the Securities and Exchange Commission ("SEC") in the above-referenced action (the "Complaint"). Vale does not seek to relitigate any of the Court's previous rulings in the related class action filed in January 2019 (the "Class Action").[1] The allegations and circumstances in this case are different than in the Class Action and warrant a different outcome.

Since the Class Action complaint was filed, the SEC has conducted its own years-long investigation, and numerous public reports regarding the circumstances surrounding the failure of Dam 1 have been released that foreclose the SEC's fraud theory. The record before the Court is now clear that the failure of Dam 1, while an environmental and humanitarian tragedy, was not reasonably foreseeable. Vale therefore had nothing to hide concerning Dam 1—where the SEC says Vale fraudulently hid information, its Complaint shows that Vale actually disclosed that information. Against this backdrop, the SEC (unlike the Class Action plaintiffs) alleges that Vale schemed to hide critical facts about Dam 1 from the external auditors examining the dam, but documents incorporated into the Complaint clearly demonstrate that Vale instead disclosed those facts to external auditors as well as to an independent, external group of leading international geotechnical experts. It is well settled that this type of contradictory pleading is insufficient as a matter of law. The Complaint also raises a number of alleged misstatements and omissions that were neither relied on nor considered in the Class Action, and that contain nonactionable statements of opinion and puffery. Finally, in light of the conclusions in public reports incorporated into the Complaint that Dam 1's collapse was not foreseeable, the Complaint fails to sufficiently allege that the misstatements and omissions were material.[2]

## VALE'S PROPOSED MOTION TO DISMISS

The Complaint fails to state a claim under Sections 10(b) and 13(a) of the Exchange Act and Section 17(a) of the Securities Act, falling short of the heightened pleading requirements under Federal Rule of Civil Procedure 9(b).

***No Scienter***. Unlike the Class Action complaint's broader allegations of known dangers at Dam 1, the SEC's claims rest on the narrower assertions that junior Vale employees (1) knew that Dam 1 was unstable based on its safety factor and certain studies and (2) hid one data point

---

[1] *See In re Vale S.A. Sec. Litig.*, No. 19-cv-526 (RJD) (SJB) (E.D.N.Y.).
[2] Vale reserves its right to present additional arguments in its motion to dismiss.

from Dam 1's auditors (that some third parties considered certain laboratory data to be faulty and unreliable). Neither assertion raises a strong inference of scienter.

*First*, despite the SEC's allegation that Vale "knew" Dam 1 was unstable because it allegedly had a low safety factor, the independent reports cited in the Complaint concluded, based on expert assessments considering a range of factors, that Dam 1 appeared stable until its collapse, and that the collapse itself was not foreseeable. For example, one independent report concluded that Dam 1's failure "occurred with no apparent signs of distress," even in "[h]igh-quality video from a drone flown over Dam 1 only seven days prior to the failure."[3] Overall, the documents cited in the Complaint show that Vale employees, as well as Vale's external auditors and independent geotechnicians, reasonably believed that Dam 1 was stable and was certainly not at risk of imminent collapse.[4]

*Second*, the SEC's allegations that junior Vale employees hid information from, or pressured three external auditors to certify Dam 1 as stable, are insufficient as a matter of law. The allegations as to each auditor's issuance of a stability certificate are "contradicted by the complaint itself, by documents upon which the pleadings rely, [and] . . . by facts of which the court may take judicial notice,"[5] which show that Vale voluntarily disclosed the same information to those auditors as well as other independent geotechnical experts.

- **Auditor A.** The SEC alleges that Vale wrongfully secured stability certificates from Auditor A because Vale was aware that Auditor A used allegedly unreliable laboratory data despite a recommendation not to do so from a consultant hired by Auditor A. However, Auditor A itself declined to follow the recommendation of its own consultant, and there is no allegation that Vale had a role in that decision. Thus, the SEC alleges at most a disagreement among geotechnical experts, which is not a basis for a fraud claim.[6]

- **Auditor B.** The SEC pleads only conclusory allegations that Vale personnel concealed from Auditor B the recommendation that certain lab data should not be used to evaluate Dam 1's stability. Despite its investigation, the SEC fails to allege the who, what, when, where and why of Vale's alleged "concealment."[7] To the contrary, audit reports cited by the SEC demonstrate that Vale openly shared information with Auditor B, including a report discussing the specific recommendation from Auditor A's consultant. Compl. ¶ 97 (citing the report). The SEC also admits that Vale voluntarily disclosed the allegedly "concealed" recommendation and the lab data itself to a panel of leading experts with the technical capacity to understand the data. *Id.* ¶ 103. This disclosure was made at meetings

---

[3] *See also* Compl. ¶ 132 (citing audit report that in uncited portion stated, "[a] very positive factor is the halting of the tailings disposal and the pumping of the water reservoir"); *id.* ¶ 87 (citing audit report that in uncited portion stated, "possibility of the occurrence of a trigger of static nature is remote"); *see also id.* ¶¶ 60, 79, 86, 137, 170.

[4] *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) ("refus[ing] to allow plaintiffs to proceed with allegations of 'fraud by hindsight'" as "[c]orporate officials need not be clairvoyant").

[5] *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011); *see also Accurate Grading Qual. Assur., Inc. v. Thorpe*, No. 12-cv-1343 (ALC), 2013 WL 1234836, at *8 (S.D.N.Y. Mar. 26, 2013) ("[W]hen the facts alleged by the plaintiff are 'so contradictory that doubt is cast upon their plausibility,' the court may 'pierce the veil of the complaint's factual allegations . . . and dismiss the claim.'") (citation omitted).

[6] *Martin v. Quartermain*, 732 F. App'x 37, 41 (2d Cir. 2018) ("'Plaintiffs' allegations . . . [do] little more than [raise] a dispute about the proper interpretation of data, a dispute this Court [has] rejected as a basis for liability.'") (quoting *Tongue v. Sanofi*, 816 F.3d 199, 214 (2d Cir. 2016)).

[7] *See, e.g.*, Compl. ¶¶ 94–96, 101, 108, 112, 115–116, 125, 128, 130.

that Auditor B attended, further underscoring that Vale did not conceal that recommendation from Auditor B. *Id.* ¶¶ 102–103, 107.

- **Auditor C.** The SEC implausibly alleges that Vale personnel suddenly gave up on their alleged scheme to hide the consultant's recommendation and instead pressured Auditor C to issue a stability certificate. The SEC offers no explanation as to how or why this unrealistic turn of events occurred. Further, these allegations are contradicted by additional documents that the Court may properly consider in ruling on this motion, in which Auditor C's employees stated under oath that Vale personnel did not actually pressure them to issue a stability certificate.

*Finally*, the SEC principally relies on the alleged knowledge of more junior employees who did not believe Dam 1 would collapse—and whose mental state, at any rate, cannot be imputed to Vale.[8]

**<u>*Inactionable Statements or Omissions*</u>**. The Court should also dismiss a number of alleged misstatements and omissions pleaded by the SEC that plaintiffs did not rely on in the Class Action because they reflect inactionable statements of opinion and puffery. *First*, the new statements reflect significant judgment in highly technical areas, including the statement that 2016 audits were conducted in the "presence of international auditors, incorporating the vision of good practice in the world." Compl. ¶ 222. Such statements of opinion are not misleading merely because one expert would have weighed the underlying data differently or the SEC, with the benefit of hindsight, would have reached a different conclusion.[9] *Second*, the new statements challenged by the SEC also include inactionable puffery, such as that "[i]n addition to regulatory compliance, Vale works proactively with complementary processes and initiatives." Compl. ¶ 245.[10]

**<u>*Lack of Materiality*</u>**. The SEC also fails to show a "substantial likelihood that a reasonable person" would have considered the alleged misrepresentations "important in deciding whether to buy or sell shares of [Vale] stock."[11] The disclosures include statements that Vale believed its dams were stable (because it genuinely believed they were) or that Vale's dams were audited (which they were). The alleged omissions (including that Vale's auditors relied on laboratory data when conducting stability analyses for Dam 1, or that they disagreed with a recommendation from one geotechnical expert) are much narrower than those alleged in the Class Action and are simply too granular to be a required disclosure. The disclosure of this very technical information would not and could not have led a reasonable investor to conclude that Dam 1 was not stable because no one—not the external auditors, not the independently retained geotechnical experts, not Vale management, and not those who assessed the dam's collapse—believed so based on this information.

---

[8] *See Barrett v. PJT Partners Inc.*, 2017 WL 3995606, at *7 (S.D.N.Y. Sept. 8, 2017) ("Whether [an employee's] scienter can be imputed to [Vale] depends on whether he was a sufficiently senior officer at the company.").

[9] *See, e.g.*, *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 154 (2d Cir. 2013) ("[W]here a defendant's competing analysis or interpretation of data is itself reasonable, there is no false statement."); *Martin*, 732 F. App'x at 39 (opinion statement is not misleading simply because "an issuer knows, but fails to disclose, some fact cutting the other way," even when that fact "is the contrary opinion of an expert or authority") (citation omitted).

[10] *Gross v. GFI Grp., Inc.*, 784 F. App'x 27, 30 (2d Cir. 2019) (statements touting company's "highly disciplined" risk management process were "puffery"); *cf. In re Peabody Energy Corp. Sec. Litig.*, No. 20-cv-8024 (PKC), 2022 WL 671222, at *13 (S.D.N.Y. Mar. 7, 2022) (statements that company "achieved record safety this past year" was puffery, even though, mine was well-known historically to be a safety risk).

[11] *Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019).

Respectfully submitted,


/s/ Jennifer Kennedy Park
Jennifer Kennedy Park
(jkpark@cgsh.com)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
T: 212-225-2000
F: 212-225-3999

*Attorney for Defendant Vale S.A.*


cc: All Counsel of Record (*via ECF*)